OSCAR FRIED, Respondent, *v.* THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY, Appellant.

Second Department, May 18, 1917.

**New trial — newly-discovered evidence — condition that plaintiff be allowed to read testimony of witness on prior trial — right of defendant to offer impeaching statements or affidavits without laying foundation therefor.**

On a motion by the defendant in an action for personal injuries for a new trial on the ground of newly-discovered evidence, the court may impose as a condition that the plaintiff may read on the new trial the testimony given by one of its witnesses at the first trial, where such witness, now in a foreign State, has made an affidavit to the effect that he knowingly committed perjury on the first trial at the instigation of plaintiff's attorney, and is also under pressure of indictment procured by the defendant, by whom his family has been supported for several months; but the defendant, if the plaintiff reads such testimony, should ·be allowed to offer impeaching statements or affidavits without laying the foundation therefor by previous questions to the witness.

In this way the jury may hear the evidence as already given, together with the impeaching evidence, and so decide where the truth lies.

THOMAS, J., and JENKS, P. J., dissented, with opinion.

APPEAL by the defendant, The New York, New Haven and Hartford Railroad Company, from that part of an order of the Supreme Court, made at the Westchester Special Term and entered in the office of the clerk of the county of Westchester on the 9th day of February, 1917, amending two prior orders so as to grant defendant's motion for a new trial on the ground of newly-discovered evidence, which prescribes as a condition for the granting thereof the following provision, viz.: that plaintiff may read in and as evidence upon any trial of this case the testimony given by his witnesses at the last trial, and that if any witness whose testimony is so read to the jury shall hereafter testify to the contrary either upon a new trial or before any commissioner appointed to take his testimony in the case, then the jury shall be permitted to decide whether the testimony which said witness gave at the last trial was true or false.

*James W. Carpenter* [*Charles M. Sheafe, Jr.,* with him on the brief], for the appellant.

*Thomas J. O'Neill* [*Edgar T. Brackett* and *Leonard F. Fish* with him on the brief], for the respondent.

BLACKMAR, J.:

The serious question between the plaintiff and defendant is the liability of defendant to respond in damages for the serious injuries which the plaintiff suffered while in defendant's employ. To properly determine this question is the sole end and object of the action, and everything done by the court, all judgments and orders made, all appeals decided, must be solely directed to securing this result. For the present, questions of conduct of counsel, resting on charges and counter charges, must be subordinated to that end.

On the last trial, a witness, Berkery, gave important testimony tending to sustain plaintiff's cause of action, and plaintiff recovered a verdict for $75,000 damages for the loss of both arms, amputated at the shoulders, as the result of burns from escaping electric fluid. After action by the court for

the reduction of the verdict to $55,000, a motion was made for a new trial by the defendant, on the ground that it had discovered evidence tending to show that Berkery had committed perjury upon the trial on subornation of plaintiff's attorney. The motion was granted and an order so entered. On this motion and on another, made by plaintiff, to vacate this order, many affidavits were read. Among them was one by Berkery, deposing that he had knowingly committed perjury at the instigation of plaintiff's attorney. On the other hand, it appeared that Berkery was not only under pressure of an indictment procured by defendant, but that defendant, while Berkery was in jail, paid to his family $12 a week for seven months, and, after he left jail, $21 per week for nineteen months. It is a fair inference that this witness is now in the control of the defendant and out of the State, and his testimony is claimed to be essential to plaintiff's case, although upon this point we express no opinion. The defendant claims that plaintiff's judgment rested on the perjured testimony of this witness; on the other hand, the plaintiff claims that his testimony given at the trial was true and that the subsequent affidavit retracting it is perjury. On the one hand, it would be gross injustice that plaintiff's verdict should rest on perjury, and on the other no less an injustice would result if a just cause of action should be destroyed by defendant's acts. The witness Berkery is a venal and perjured witness; but the question is, which evidence is true, that given on the trial or in the retracting affidavits. After this court had affirmed the order granting a new trial and that denying a motion to set it aside (176 App. Div. 936), application was made to us to modify the order by inserting the conditions above stated. We denied this application, with leave to the plaintiff to apply for such relief to the justice who made the order. The application was made to the justice, who granted it and imposed the condition to the new trial that plaintiff might read upon the new trial, as evidence, the testimony given by his witnesses at the last trial. We have no doubt of the power of the court to impose such a condition upon granting the favor of a new trial to the defendant. For it was granted as a favor and not a right. Neither at Special Term nor in the Appellate Division has the court decided that

Berkery committed perjury at the trial.  The extent of the decision was that the evidence that he had committed perjury was so strong that the case should be retried so that the value of his evidence could be tested by the jury, who alone were competent to pass on the facts, in the light of the evidence of his subsequent retraction.  In the exercise of his discretion, the justice at Special Term, who was also the judge who tried the case, has determined that in view of the peculiar circumstances of the case justice requires that plaintiff be permitted to read the testimony given at the former trial. In this way the jury may hear the evidence as already given, together with the impeaching evidence, and decide where the truth lies.  We see no reason why we should reverse the decision.  Under certain circumstances, testimony of a witness on a former trial may be read in evidence on a new trial.   (Code Civ. Proc. § 830.)   This may be done as matter of right if the witness has died, become insane, being a non-resident has departed from the State, or has been rendered incompetent by operation of the provisions of section 829 of the Code. In this case the court, as a condition to granting a favor, extended the rule to the testimony of a witness who, since the first trial, has come under the pay and resulting control of the opposite party to the action.  The favor granted by the court is not to the plaintiff in permitting him to use incompetent evidence, but to the defendant in granting a new trial.  If the defendant accepts the new trial, it accepts the condition, and the evidence goes in by its consent.  The appeal to us is to permit the defendant to accept the favor and reject the condition on which it is offered.  We might have taken a very different view of the matter except for the fact that it is conceded that the defendant paid to Berkery's wife twelve dollars a week for seven months and twenty-one dollars a week for nineteen months, and that such payments ceased only on the very day after the motion which resulted in the order appealed from was made.  But it is argued that it violates fundamental principles of judicial administration to permit testimony of a witness theretofore taken to be read in evidence while the witness, in an affidavit then existing, asserts its falsity.  This argument seems to us to rest on the faulty assumption that the later testimony

of the witness is necessarily true.   At the time the testimony was given the witness was in a court of justice and, in the presence of judge and jury, sworn, examined and subjected to cross-examination.   When he made the retracting affidavits he was in the State of Pennsylvania, presumably in a private office, swearing before a notary public to an affidavit prepared by someone else.   We know of no presumption that the later oath is the true one.   It is a question for the jury which is true.   If at the time of the new trial the witness were dead, or, being a non-resident, absent from the State, the testimony could be read no matter how many contradicting affidavits he had since made.   As to the quality of the evidence, it makes no difference whether the conditions to its admission, prescribed in section 830 of the Code, or those present in this case and upon which the court acted, exist.   And if, in cases provided for by the Code, to receive the evidence violates no fundamental principle of judicial administration, neither does it in this case.   We think the Special Term has prescribed the only way in which the question can be passed on by the jury; but we think the order should be modified so as to confine the permission to the testimony of Berkery, and to permit the defendant, if the plaintiff reads it, to offer impeaching statements or affidavits without laying the foundation therefor by previous questions to the witness.

The order is modified in accordance with this opinion, and as modified affirmed, without costs.

STAPLETON and RICH, JJ., concurred; THOMAS, J., dissented in separate opinion, with whom JENKS, P. J., concurred.

THOMAS, J. (dissenting):

The plaintiff recovered a judgment of $75,000, which was set aside upon motion based on the confession of two witnesses, that they had committed perjury on the trial. The order was absolute and was affirmed by this court. Thereafter the court at Special Term amended the order to permit the plaintiff to read the testimony of the witnesses, including Berkery, irrespective of their attendance upon the trial, and such order is now under review.   The essential question is not whether the court has power under proper circumstances to make the reading of former testimony a

condition of a new trial, although this court considered that the new trial should be had in any event. The vice of the order lies in the inducement to making it. The court was not led to it because of some inconvenience to the plaintiff in procuring the attendance of Berkery, or because Berkery might be absent or incapacitated, or because his mind might have weakened, or his memory waned, or his speech become faltering, or his powers abated, or because he was less presentable in any wise. Nor was the reason simply that Berkery had become hostile to plaintiff, as he has, and might begrudge the testimony or impede the elicitation of it. In such case the examiner may confront a witness with his former testimony to break down resistance and to force the memory, and to that end the court will be tolerant. The sole purpose in allowing Berkery's former testimony to be read was, that the court knew or conceived or apprehended that it was no longer his testimony — no longer the testimony that he would give, and that at a point where his affirmance of a fact was vital, he would deny that it existed. The underlying reason for allowing the former testimony of a witness to be substituted for his present sworn statement is, that it is what the witness would say orally, and so the statute has set forth the instances where it is permitted. Berkery's testimony is to be read because the plaintiff knows, or fears, that, in an essential particular, it is precisely opposite to what Berkery in person would say. It is known that Berkery now affirms under oath that his former testimony was in part willfully false, and because he has so declared under oath, and another had similarly stated as to his own testimony, the new trial was granted in the interest of justice. But the very testimony that Berkery says is not true but corrupt, that he disclaims as his testimony, at which he revolts, of which he is theoretically penitent, is to be received as his own genuine, moral and legal testimony, although he protests it. And on it a verdict is to be allowed to rest. So the testimony, that was so accused that the court challenged a verdict supported by it, may be read to impel another verdict, although the person who gave it says that it is the product of a violated oath, that it betrays the truth and is the converse of his knowledge, memory and moral sense. But it may be answered

that Berkery has no moral sense, and in that I agree. And in that view the proposal is to allow the plaintiff to read the former testimony, because Berkery's moral nature does not permit him to tell the truth. The argument is, as I understand, that at the last trial he may have had a truth-telling capacity that lends worth to his former testimony, but that defendant corrupted it by bribes. So, having set aside the verdict at least in suspicion of the earlier moral quality, the proposal is to let the jury decide whether his former declaration under oath, albeit denounced by the declarant, is what he knows and believes to be true, or whether his denial of it on this trial is a sincere revelation of his knowledge, and in determining that issue his intermediate statements may be considered, together, I assume, with the bribes. If the jury shall determine that Berkery told the truth on the first trial, his testimony there shall be adopted by them as his testimony for the purposes of this trial. He, perchance, says: " It was then I committed perjury." The jury may say: " No, it is now that you commit it." If he should say: " This testimony now given is my present real testimony," the jury may say: " No, that read to us is your present unalloyed testimony." So a witness' former declarations become his testimony, struggle against and denounce it as he may. In that way the perjurer becomes a pure fountain of truth. In vain he cries out that he was a perjurer. The jury had read his heart and fitted words to his lips, so that speaking in the present he is made to speak as in the past, and what he said in the past become his words in the present, although he would have none of them. So a full well and living witness in attendance on court is made on his oath to say that something is true that at the same time on his oath he says is not true, that on it a jury may hang a verdict. Even a perjurer and bribe-taker should not be enforced to swear to what is not his immediate testimony and to have what he avows are perjuries coined into his approval. That would be fabrication. It were far better to sweep aside the corrupt and corrupted Berkery, to commend him to the proper district attorney, to declare our utter condemnation that great sums of money have been paid him or held as lure before him, better to cleanse this case of the

tainting elements that infect it and stain the administration of justice, and thereby restore the case to usual and healthful channels. The plaintiff, even mutilated as he is, should not be allowed to deform the law. Let him take the usual chance that the law affords. There could not be a more marked instance of ignoring the principle on which the introduction of former testimony rests, or the misuse of the declarations of a witness, not a party to the action. The Code of Civil Procedure (§ 830) authorizes to be read in evidence the testimony of a witness, who has died, or who, being a non-resident, has departed from the State, or become insane, or incompetent. Happily, in such instances, the present situation is impossible. But the testimony of Berkery, alive, sane and competent, by the order, may be read to his face, while he rejects it, and he cannot escape the ownership of it, nor even the recurring perjury of it, if the jury choose to fasten it upon him unwilling. Something so strange) as that seldom, if ever, has been seen in a court of justice — a man testifying as a two-fold witness at the same trial, now in his proper person, now through former declarations; his word set against his word; his oath disputing and dishonoring his oath, and thereupon a jury, by some mystery of fathoming, selecting the truth of which it deems the duplex witness conscious. It even surpasses a paradox. I am opposed to such process for racking off perjuries and ascribing to the filtrate probative value, and above all to entering on the record that it is the man's testimony, although it must be known, if he dispute it, that it is not. A man's shadow may be in obscure semblance of himself, but what a man, not a party, has uttered in the past, should not be recorded as something that he is presently saying, while, under a new oath taken, he then and there brands it as infamous.

The order should be modified so as to permit testimony to be read in case the witnesses are not in attendance at the court.

JENKS, P. J., concurred.

Order modified in accordance with opinion by BLACKMAR, J., and as modified affirmed, without costs. Order to be settled before Mr. Justice BLACKMAR.