OSCAR FRIED, Respondent, *v.* NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY, Appellant.

Second Department, May 10, 1918.

**Master and servant — negligence — action under Federal Employers'
Liability Act for injury to electric lineman from contact with live
wire — assumption of risk — burden of proof — validity of order
of common carrier as to duties of employees and as to liability
for injuries — concession by defendant that at time of injury
parties were engaged in interstate commerce is binding during
entire litigation — discretionary power of court to relieve from
such stipulation — when motion denied — new trial conditioned
upon right of plaintiff to read testimony of witness on former
trial — excessive verdict.**

In an action under the Federal Employers' Liability Act by a foreman of a
gang of electric linemen, for personal injuries based on the negligence of a
general foreman, and also a member of the gang of which plaintiff was
foreman, both employees of defendant and fellow-servants of the plaintiff,
it appeared that on the day of the accident the plaintiff was engaged in
stringing a feed wire and had seen a member of his gang, at the direction
of the general foreman, pull a switch de-energizing a tap wire about an
hour and a half before the accident. It is charged as an act of negligence
that said member of the gang at the direction of the general foreman
closed the switch again charging the tap wire without notifying plaintiff.
Plaintiff had signed an order of the defendant certifying that he had read
and understood the same, which cautioned employees against coming
in contact with high voltage wires, required them to inspect such wires
before handling or approaching them and further provided that " any
employee who fails to strictly observe these rules assumes the risk of
injury and this company will not be liable for any injuries so sustained."

*Held,* that, notwithstanding such order, the rules of law determined the
question of assumption of risk.

Said order is not a contract modifying the rule of liability of the master
prescribed by law for the reasons, *first,* that it does not purport on its face
to be a contract; *second,* that it is supported by no consideration, for it is
not a part of the plaintiff's contract of employment, as plaintiff's signature
was obtained long after he was employed; and *third,* that it is against
public policy for an employing railroad company to contract with an
employee to relieve itself from liability for negligence imposed by law.

Said order is evidence as to the duties of the plaintiff with respect to working
near high voltage wires, and is a warning as to danger and an instruction
how to avoid it, but it is not competent to and does not change the rule of
law as to assumption of risk, especially since the Employers' Liability Act
provides that any rule enabling a common carrier to exempt itself from any
liability created by the act shall to that extent be void.

Under the circumstances in this case, it cannot be said as matter of law that plaintiff assumed the risk, but it was a question of fact whether the defect and risk were so obvious that an ordinarily prudent person would have observed and appreciated it.

The risk in this case was not such a danger as is normally necessarily incident to the occupation, but it was one which arose out of the negligence of a fellow-servant, attributed to the master by the operation of the statute, and, therefore, it cannot be held that the plaintiff assumed it unless it be shown that he knew the wire was charged or unless the fact was so obvious that an ordinarily prudent person would have observed it and so learned of the risk and danger; in other words, unless he had actual or constructive knowledge.

The defendant had the burden of proof upon the question of assumption of risk.

A concession by the defendant on the first trial that at the time the plaintiff was injured he and the defendant were then and there engaged in interstate commerce was binding during the entire litigation. The court, however, had power in its discretion to relieve from such stipulation, but it did not abuse its discretion in denying the defendant's motion for an order to show cause why it should not be relieved from the concession, where it appeared that the defendant, learning at the opening of the trial that it was to be held to said concession, waited until near the end and after the plaintiff had submitted his evidence and closed his case before making said motion.

As a new trial was conditioned on plaintiff's right to read the testimony at the former trial of the member of the gang of which he was foreman, defendant by accepting the new trial also accepted the condition, and the question of the propriety of such condition having been considered by this court, and no leave having been given to appeal to the Court of Appeals nor question certified, the decision of this court in affirming the interlocutory order is final, and hence the admission of such evidence cannot be urged as a ground of reversal.

A verdict for $85,000 for the loss by plaintiff of both arms at the shoulder sockets, and other injuries, *held* excessive and reduced to $55,000.

APPEAL by the defendant, New York, New Haven and Hartford Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Westchester on the 18th day of July, 1917, upon the verdict of a jury for $85,000, and also from an order entered in said clerk's office on the 11th day of July, 1917, denying defendant's motion for a new trial made upon the minutes, and also from an order dated the 18th day of June, 1917, denying defendant's motion made during the trial to be relieved from a stipulation made upon the first trial of the

action to the effect that the plaintiff and defendant were engaged in interstate commerce at the time of the accident.

*William Travers Jerome [Harland B. Tibbetts, George F. Lewis* and *Charles M. Sheafe, Jr.,* with him on the brief], for the appellant.

*Thomas J. O' Neill [Leonard F. Fish* with him on the brief], for the respondent.

BLACKMAR, J.:

On December 8, 1913, the plaintiff, while in the employ of defendant as foreman of a gang of electric linemen, was so burned, by coming in contact with a wire charged with 11,000 volts of electricity, that he lost both arms at the shoulder sockets and suffered other injuries. For this cause he has recovered a judgment against the defendant on a verdict for $85,000, and from the judgment defendant appeals to this court.

The complaint alleged that at the time of the accident plaintiff and defendant were engaged in interstate commerce, thereby invoking the Federal Employers' Liability Act applicable to common carriers by rail. (35 U. S. Stat. at Large, 65, chap. 149, as amd. by 36 id. 291, chap. 143.) This act radically departs from the common law governing such relations, in that it makes the employer liable to a servant for the negligence of a fellow-servant. The judgment appealed from is based on the negligence of one Tobin, a general foreman, and Berkery, a member of the gang of which plaintiff was foreman, both employees of defendant and fellow-servants of the plaintiff.

On the day in question the plaintiff was engaged in the freight yard at Mount Vernon in stringing a feed wire along the struts on the south side of defendant's road. The wires on the south side had been de-energized from Cos Cob and plaintiff was so notified by a telegram; but a tap wire, charged with 11,000 volts of electricity, was led across from the north side to transformers on the strut on the south side. The plaintiff had seen Berkery, by direction of Tobin, pull a knife switch de-energizing this wire about an hour and a half

before the accident. The act of negligence charged by plaintiff, and necessarily found by the jury, was that Berkery, at the direction of Tobin, closed the switch, again charging the tap wire, without notifying plaintiff; so that plaintiff, not knowing that the switch had been closed, climbed the strut in performance of his duty, came in contact with the tap wire, and so received the injuries.

The defendant claims that plaintiff assumed the risk. The argument is based on the facts in the case and on the terms of an order promulgated by the defendant for the government and protection of its employees and brought to the notice of plaintiff. The order reads as follows:

"THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

"All employees are hereby cautioned against coming in contact with high voltage wires.

"All employees whose duties require them to work on or near insulated wires are required to inspect them in order to determine the condition of the insulation before handling, coming in contact with, or approaching them. It is considered dangerous to approach wires carrying from twenty-two hundred volts up, nearer than fourteen inches.

"Employees are required to inspect high voltage wires adjacent thereto or wires liable to be crossed with high voltage wires, before working on them.

"All wires, whether trolley, messenger, pull-off, guy, guard, feed or power wires, on catenary bridges, should be considered as charged with at least eleven thousand volts at all times. All such wires and Signal Department wires on electrified lines cut dead for any purpose accumulate an induced current of high voltage, and all employees are instructed and required to see that such wires are thoroughly grounded at the point where work is to be done before working on or near them.

"Employees are further required, before placing themselves in hazardous positions, or climbing poles that they have not properly tested, or relieving poles of wires which have acted as guys, to see first that the pole is properly guyed or braced.

"Any employee who fails to strictly observe these rules

assumes the risk of injury, and this company will not be liable for any injuries so sustained.

" It is plainly understood that the responsibility of the observance of this order lies with the employee individually, and not with the supervisor, inspector, foreman, or any other superior.

" EDWARD GAGEL,

" NEW HAVEN, CONN.,                    *Chief Engineer.*
    " *May* 1*st*, 1908.

" I hereby certify that I have read and understand the above order.

" (Signed)      OSCAR FRIED,
" Position Lineman
" Date  May  19,  1913."

I think that, notwithstanding such order, the rules of law determine the question of assumption of risk.   The order which plaintiff certified that he had read and understood is not a contract which modifies the rule of liability of the master prescribed by law, for the reasons, *first*, that it does not purport on its face to be a contract; *second*, that it is supported by no consideration, for it is not a part of the plaintiff's contract of employment as plaintiff's signature was obtained long after he was employed (*Purdy* v. *R., W. & O. R. R. Co.*, 125 N. Y. 209); and, *third*, that it is against public policy for an employing railroad company to contract with an employee to relieve itself from liability for negligence imposed by law.   The rule is so settled in New York by the leading case of *Johnston* v. *Fargo* (184 N. Y. 379), and it seems to be approved where the question has arisen in the United States courts.   (*Roesner* v. *Hermann*, 8 Fed. Rep. 782; *Otis* v. *Pennsylvania Co.*, 71 id. 136; *Atlantic Coast Line R. Co.* v. *Geraty*, 166 id. 10.)   The case of *Baltimore & Ohio, etc., Railway* v. *Voigt* (176 U. S. 498), which upheld a contract releasing a railroad company from liability to an employee of an express company, is not a direct authority on the question for the relation of master and servant did not exist between defendant and plaintiff.   The order in question is evidence as to the duties of the plaintiff with respect to working near high voltage wires; it is a warning as to danger and an instruction

how to avoid it, but it is not competent to and does not change the rule of law as to assumption of risk. If there were any doubt upon the subject it would be set at rest by the provision of the act itself, which reads (§ 5): " Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this Act, shall to that extent be void." (35 U. S. Stat. at Large, 66, § 5.)

The negligence for which the judgment was recovered was that of a fellow-servant. At common law the plaintiff assumes such risk, but under the provision of the act of Congress he does not. But this negligence did not operate on plaintiff directly. It operated to produce an unsafe place for work. Undoubtedly an employee may assume the risk of an unsafe place, or unsafe tools and appliances, unless rendered unsafe by a violation by the common carrier of a statute enacted by Congress for the safety of employees (35 U. S. Stat. at Large, 66, § 4). The question was submitted to the jury by the learned trial justice in a charge in which the law was stated as favorably to defendant as it could justly claim. But the court did refuse to instruct the jury as matter of law that the plaintiff assumed the risk. To the refusal of that request the defendant excepted. Such instruction would have been equivalent to a direction of a verdict for the defendant. So that the question before the court is whether upon the record it can be said as matter of law that plaintiff assumed the risk.

The doctrine of assumption of risk is formulated by the Supreme Court of the United States in *Seaboard Air Line* v. *Horton* (233 U. S. 492). At the risk of being charged with prolixity, I propose to state the rule in words taken from the opinion in that case, instead of attempting to paraphrase them. After defining contributory negligence, the court said: " On the other hand, the assumption of risk, even though the risk be obvious, may be free from any suggestion of fault or negligence on the part of the employé. The risks may be present, notwithstanding the exercise of all reasonable care on his part. Some employments are necessarily fraught with danger to the workman — danger that must be and is confronted in the line of his duty. Such dangers as are normally and necessarily incident to the occupation

are presumably taken into the account in fixing the rate
of wages.   And a workman of mature years is taken to assume
risks of this sort, whether he is actually aware of them or not.
But risks of another sort, not naturally incident to the occupa-
tion, may arise out of the failure of the employer to exercise
due care with respect to providing a safe place of work and
suitable and safe appliances for the work.   These the employé
is not treated as assuming until he becomes aware of the
defect or disrepair and of the risk arising from it, unless defect
and risk alike are so obvious that an ordinarily prudent person
under the circumstances would have observed and appreciated
them."

The risk in this case was not such a danger as is normally
and necessarily incident to the occupation, but it was one
which arose out of the negligence of a fellow-servant, attributed
to the master by the operation of the act.   It, therefore,
cannot be held that the plaintiff assumed it unless it be shown
that he knew the wire was charged, or unless the fact was
so obvious that an ordinarily prudent person would have
observed it, and so learned of the risk and danger; in other
words, unless he had actual or constructive knowledge.   In
this case the plaintiff did not know that the wire was charged,
for he had seen Berkery pull the switch for the very purpose
of de-energizing the wire so that plaintiff might safely work
near it.   The question is left whether the situation was such
that an ordinarily prudent person should have known of the
danger.   Upon the subject of assumption of risk the defend-
ant had the burden of proof.   It is true that the order of the
railroad company instructed the plaintiff that every wire
should be considered as charged with at least 11,000 volts of
electricity and that, to avoid an induced current of static
electricity in wires cut dead, they should be grounded.   But,
on the other hand, the plaintiff had seen the wire cut dead for
the very purpose of making it safe for him to work, and this
wire was so placed that no current could be induced in it.
How plainly the closed switch could be seen is in doubt; but
plaintiff, relying entirely on what he had seen, made no
investigation and did not even look at the switch.   Under all
these circumstances I think it was a question of fact whether
the defect and risk were so obvious that an ordinarily prudent

person would have observed and appreciated it. The verdict of the jury, given under the precise and accurate charge of the learned trial justice, has determined the question against the defendant. (*Dowd* v. *N. Y., O. & W. R. Co.*, 170 N. Y. 459.)

The case has been tried three times. On the first trial the counsel for defendant conceded that at the time the plaintiff was injured he and the defendant were then and there engaged in interstate commerce. On the second trial the presiding justice held that such concession was for the purpose of the first trial only, and the trial proceeded as if such concession had not been made. On the third and present trial the point was raised at the beginning of the trial and the learned justice who presided ruled that defendant was bound by the concession and rejected evidence which defendant offered as tending to negative the allegation in the complaint that plaintiff and defendant were engaged in interstate commerce. The trial thereupon continued. After it had been in progress for six days and plaintiff had rested, defendant moved upon affidavits to be relieved from the stipulation. The motion was denied, and the notice of appeal brings up for review the order denying such motion. Unquestionably the learned justice was right in holding that the concession was binding during the entire litigation. (*Stemmler* v. *Mayor, etc.*, 179 N. Y. 473.) That the court had power to relieve from such stipulation is also unquestioned. (*Carnegie Steel Co.* v. *Cambria Iron Co.*, 185 U. S. 403.) The stipulation was competent evidence of facts which called for the application of the Federal Employers' Liability Act. It was not a question of the jurisdiction of the court, but a question as to what law was applicable. As was said in *Second Employers' Liability Cases* (223 U. S. 1, 56): "There is not here involved any attempt by Congress to enlarge or regulate the jurisdiction of State courts or to control or affect their modes of procedure, but only a question of the duty of such a court, when its ordinary jurisdiction as prescribed by local laws is appropriate to the occasion and is invoked in conformity with those laws, to take cognizance of an action to enforce a right of civil recovery arising under the act of Congress and susceptible of adjudication according to the

prevailing rules of procedure." If it appeared that the parties were engaged in interstate commerce, their rights and duties were regulated by the Federal statutes. If they were not so engaged, then by the law of the State of New York. The facts were to be established by evidence admissible according to the law of the forum. The stipulation was such evidence to the exclusion of all other evidence, and conclusively established the fact.

Whether defendant should have been relieved from the stipulation rested in the sound discretion of the court. The trial began June 12, 1917. On June fifteenth the plaintiff rested his case. On June eighteenth the defendant applied to the court on an order to show cause why it should not be relieved from the concession. The motion was argued before the justice who presided at the trial, and denied. I think the discretion of the court was not abused, for this reason, if for no other, that defendant, learning at the opening of the trial that it was to be held to the concession, waited until near the end of the protracted and important trial, and after the plaintiff had submitted his evidence and closed his case, before making the motion.

After the second trial, which resulted in a verdict of $75,000 for the plaintiff, a motion was made for a new trial on the ground of newly-discovered evidence tending to show that the plaintiff's case had been maintained by subornation of perjury. The motion was granted. Subsequently, by permission of the court, the plaintiff moved for and obtained a modification of the order so as to provide " as a condition of the defendant being allowed said new trial, that the plaintiff may read in and as evidence upon any trial of this case, the testimony given by his witnesses at the last trial." The defendant appealed to this court from the order which imposed the condition in granting the new trial. Upon the appeal this court modified the order by confining the permission to the reading of the testimony of the witness Berkery, and as so modified the order was affirmed (178 App. Div. 309).

Upon the new trial the defendant objected to reading the testimony of Berkery pursuant to the condition under which the new trial was granted, and it now urges the admission of such evidence as a ground of reversal. The situation is that

the appellant asks us to reverse the judgment because the trial justice followed the order and direction of this court. The question of the propriety of the condition attached to granting the new trial by the Special Term was carefully considered by this court, on a record of affidavits which are not contained in the present appeal book. The question whether or not the condition should be imposed is, therefore, closed in this court. As it was an interlocutory order, and no leave was given to appeal to the Court of Appeals nor question certified, the decision of this court in affirming the order is final. The situation, therefore, is that the new trial was conditioned on plaintiff's right to read the testimony, and when defendant accepted the new trial it accepted the condition. The testimony was, therefore, read by consent, implied in the acceptance of the new trial, and in this respect the case is to be distinguished from those cited by defendant, and survives counsel's vigorous argument. The order does not authorize reading the testimony only in the event that Berkery is not present. It was meant to cover, as it does by its terms, exactly the situation which was developed on the trial and which was anticipated by this court, viz., that Berkery would be produced by the defendant and offered to the plaintiff.

The record does not justify an interference with the verdict on the ground that it is contrary to the evidence. Although the only direct evidence that the switch was closed by Berkery, so charging the tap wire, is found in the evidence of Berkery, read from the minutes of the former trial, which, although relevant, has little probative force, yet there is other evidence that Berkery pulled the switch for the purpose of rendering the place safe for plaintiff's work; and as the switch was closed and Berkery had the only switch stick available, the corroborating inference that he closed it is permissible.

The verdict was for $85,000, and defendant argues that it is excessive. It is the largest verdict in an action for personal injuries with which I am familiar. The injuries were very serious, inflicting necessarily great pain and anguish and resulting in total and permanent physical disability. The plaintiff is unable to perform the most intimate services to his own person. It appeared on the trial that a prior jury had rendered a verdict for $75,000, which had been

reduced by the court to $55,000, also that plaintiff's attorney
had a contract for half of the recovery and had himself expended
about $12,000 in repelling attacks upon himself and his wit-
nesses which arose out of the law suit.   These considerations
were, I think, calculated to and probably did enhance the
damages; but the defendant injected these elements into the
trial.   Nor do I think the persistent attacks upon plaintiff's
counsel failed to influence the jury against the defendant.
But the defendant cannot complain of prejudice on the part
of the jury which, perhaps induced by the peculiar situation,
it itself aroused.   It is, however, our duty to determine,
irrespective of these considerations, whether the verdict is
excessive, and if it is, to correct it.   We regret that the learned
trial justice did not follow the suggestion of this court in
*McAuliffe* v. *New York Central & H. R. R. R. Co.* (172 App.
Div. 597) and require the jury to find specially on the
subject of contributory negligence.   We think it should
have been done in this case, for even if plaintiff had seen
Berkery pull the switch there is a question of fact on the issue
of contributory negligence.   In the face of the general verdict
we cannot know whether the jury found contributory negli-
gence or not, although we might perhaps infer from the size
of the verdict that it did not.

In reaching a conclusion whether a verdict is excessive or
insufficient, little aid can be got by a consideration of any
particular decided case.   A long course of practice, numerous
verdicts rendered year after year, orders made by trial justices
approving or disapproving them, decisions on the subject
by appellate courts, furnish to the judicial mind some indica-
tion of the consensus of opinion of jurors and courts as to the
proper relation between the character of the injury and the
amount of compensation awarded.   On such considerations
we think that the verdict should be pronounced excessive.
Taking into account the nature and extent of the injury, the
reduced purchasing power of money, and indulging the assump-
tion that the plaintiff was free from contributory negligence,
we think that $55,000 is all that could be properly awarded.

The judgment and order denying a motion for a new trial
should be reversed and a new trial granted, costs to abide the
event, unless plaintiff stipulate within twenty days that the

verdict be reduced to $55,000, and the judgment modified accordingly. If such stipulation be given,. the judgment as so modified, and the said order appealed from, are unanimously affirmed; the order of June 18, 1917, is affirmed; all without costs of this appeal.

RICH, PUTNAM and KELLY, JJ., concurred; JENKS, P. J., concurred in separate memorandum.

JENKS, P. J. (concurring):

My concurrence as to this judgment and order does not imply that I have changed my views as indicated by concurrence with the dissent of THOMAS, J., in *Fried* v. *New York, New Haven & Hartford R. R. Co.* (178 App. Div. 309). I have not done so. I recognize, however, that the judgment of this court in that appeal is binding upon me.

Judgment and order denying motion for a new trial reversed, and a new trial granted, costs to abide the event, unless plaintiff stipulate within twenty days that the verdict be reduced to $55,000, and the judgment modified accordingly. If such stipulation be given, the judgment as so modified, and said order appealed from, are unanimously affirmed; the order of June 18, 1917, is affirmed, all without costs of this appeal.