HAROLD E. CONKEY, Plaintiff, *v.* NEW YORK CENTRAL RAILROAD COMPANY, Defendant.

Supreme Court, Trial Term, Monroe County, December 17, 1954.

*Charles S. Wilcox* for defendant.

*Herbert Zelenko* and *Richard C. Machcinski* for plaintiff.

ROBERTS, J. The defendant moves to set aside a verdict of $300,000 recovered by the plaintiff in an action brought under the Federal Employers' Liability Act (U. S. Code, tit. 45, § 51 *et seq.*). The motion is made upon three grounds; (1) there was no evidence of negligence on the part of the defendant; (2) reversible error was committed in receiving two photographs showing plaintiff's injuries; (3) the verdict is excessive.

Plaintiff, a brakeman employed by the defendant, was injured in the Goodman Street yards maintained by the defendant in the city of Rochester. In the early morning of December 31, 1952, plaintiff was riding on the side of a car when he was struck by a car standing upon an adjacent track, as a result of which he was thrown beneath the engine and received the injuries for which the action is brought. Plaintiff's claim is based upon the failure to furnish a reasonably safe place to work because the tracks were so located and the cars so placed upon them that there was insufficient clearance.

Plaintiff testified that when he was struck he was standing near the top of the ladder on the side of the car with his body flush against the car. The only other eyewitness to the accident was the engineer Hoffman, who testified that before the accident plaintiff was flush against the side of the car and that just as the plaintiff was approaching the car on the adjacent track he leaned back and was struck. He said he thought there would have been sufficient clearance if the plaintiff had not leaned back. Two of defendant's employees testified that as they walked between the cars after the accident they had to turn or twist sideways to get between them. They also said that the car which struck plaintiff leaned slightly to the south so that the top of the car would be closer to the car on which the plaintiff was riding. Rowell, one of defendant's witnesses, testified that following the accident he measured the distance between the two cars and there was a clearance of twenty inches near the bottom of the cars and a clearance of nineteen inches near the top where plaintiff was riding. It also appeared that on prior occasions the plaintiff and other employees of the defendant had ridden on the side of cars on the same track with cars standing on the next track without accident.

Nearly all railroad tracks are so laid out that there is close clearance between cars on adjacent tracks. The mere fact, therefore, of close clearance does not necessarily imply negligence. Thus, the defendant calls attention to certain cases where it has been held there was no negligence where a brakeman riding on the side of one car was struck by a car on an adjacent track. One of these cases is *Brooks* v. *Louisville & Nashville R. R. Co.* (233 Ky. 656). In that case there was testimony that the usual and standard clearance between cars on adjacent tracks was between three and four feet and the testimony indicated that there was a clearance of between three and three and a half feet between the car on which plaintiff was riding and the one on the adjacent track with which he came in contact. In *Toledo, St. L. & W. R. R.* v. *Allen* (276 U. S. 165), another case cited by the defendant, it appeared that there was a clearance of two feet and nine inches between the cars on the adjacent tracks.

On the other hand, the tracks may be so close or the cars so placed upon them that a question of fact is raised as to whether or not a defendant has provided a safe place in which to work. (*New York, Chicago & St. Louis R. R. Co.* v. *Peele,* 88 Ind. App. 532, certiorari denied 279 U. S. 842; *Baltimore & Ohio S. W. R. R. Co.* v. *Roberts,* 161 Ind. 1; *Chesapeake & O. Ry. Co.* v. *Mears,* 64 F. 2d 291; *Johnston* v. *Oregon Short Line Ry. Co.,* 23 Ore. 94.) In *Johnston* v. *Oregon Short Line Ry. Co.* (*supra*), a brakeman riding on the side of a car was struck by a switch pole located 19¾ inches from the side of the car on which he was riding. This is almost the identical clearance which the plaintiff Conkey had according to defendant's testimony. The Supreme Court of Oregon reversed a judgment of nonsuit, holding that a question of fact was presented as to the negligence of the defendant railroad. The Federal Employers' Liability Act provides the only remedy for injured railroad employees engaged in interstate commerce and to deprive such workers of the benefit of a jury trial in close or doubtful cases is to take away a goodly portion of the relief which Congress has afforded them (*Bailey* v. *Central Vermont Ry.,* 319 U. S. 350). In an action brought under this statute it is not sufficient in order to set aside a verdict of a jury to say that such verdict involves speculation and conjecture. It is only where there is a complete absence of probative facts to support the conclusion reached that such verdicts should be set aside (*Lavender* v. *Kurn,* 327 U. S. 645). The court feels that the question of defendant's negligence here presented a subject

for determination by a jury and that the conclusion reached is not so against the weight of evidence as to require that the verdict be set aside.

The plaintiff offered in evidence a number of photographs showing plaintiff's injuries. These consisted of both black and white pictures and colored slides. All of the photographs offered were excluded excepting Exhibits 12 and 13. In the opinion of the court these exhibits no more tended to inflame the jury than the view the jury had all during the trial of the plaintiff seated in his wheel chair. These exhibits were shown to the jury when first received but were not present in the jury room during the deliberations of the jury. The two exhibits in question were properly received in evidence. (*Alberti* v. *New York, Lake Erie & Western R. R. Co.*, 118 N. Y. 77.)

The jury fixed the total damages of plaintiff in the sum of $375,000 but reduced this amount by 20% because of plaintiff's contributory negligence, with a resulting verdict of $300,000. No medical or hospital expenses were proved by the plaintiff. The only present item of special damages was the stipulated gross loss of earnings of the plaintiff between the date of the accident and the time of trial amounting to $9,000.

The sum of $300,000 if invested in Government bonds at 3%, would yield $9,000 per year or nearly twice plaintiff's earnings at the time of the accident and at his death there would remain undiminished the principal sum of $300,000. Is such verdict excessive? While the trial court may not substitute its judgment for that of the jury, it nevertheless is vested with the power and has the duty to set aside a verdict where it in good conscience believes that the amount thereof is not sustained by the evidence. (*Kligman* v. *City of New York*, 281 App. Div. 93.) Even under the Federal practice where the appellate courts will not ordinarily pass upon the excessiveness of a verdict, the right to grant relief from such a verdict rests solely in " the judgment and the conscience of the trial judge on motion for a new trial ". (*St. Louis Southwestern Ry. Co.* v. *Ferguson*, 182 F. 2d 949, 954.)

In *Fried* v. *New York, New Haven & Hartford R. R. Co.* (183 App. Div. 115, affd. 230 N. Y. 619), the court prescribed a guide to be used in approaching the question of the excessiveness of a verdict. It there said (183 App. Div. 115, 125, *supra*): " In reaching a conclusion whether a verdict is excessive or insufficient, little aid can be got by a consideration of any particular decided case. A long course of practice, numerous verdicts rendered year after year, orders made by trial justices approv-

ing or disapproving them, decisions on the subject by appellate courts, furnish to the judicial mind some indication of the consensus of opinion of jurors and courts as to the proper relation between the character of the injury and the amount of compensation awarded.''

An analysis of the verdict here requires the consideration of two elements: (1) loss of earnings past and future; (2) other damages resulting from the nature and extent of the injuries. There is some mathematical guide to indicate a maximum amount for loss of earnings, but it is only through an examination of other cases involving comparable injuries that a court can attempt to measure other elements of damage.

Plaintiff was forty years old at the time of trial. It was stipulated that his life expectancy was 29.25 years. At the time of the accident his gross annual wages were $4,830. Plaintiff's counsel in his summation to the jury pointed out that plaintiff's future earnings, arrived at by multiplying his earnings at the time of injury by his life expectancy, would amount to approximately $140,000, and that the present value of this sum if deposited in a savings bank at $2\frac{1}{2}\%$ interest, would be approximately $101,430, which for the purpose of using round numbers will be considered as $101,000. There was no evidence that the earnings of a brakeman would increase after he reached the age of forty. It is more probable to assume that the earnings of such an employee would decrease or at least not be maintained at the present scale throughout his life expectancy or until he reached the age of almost seventy years. The jury might well have found the plaintiff would rehabilitate himself and become wholly or partly self-supporting. The present value of plaintiff's future loss of earnings as estimated by his counsel is obviously high. It was based on savings bank interest of $2\frac{1}{2}\%$. It might well be assumed that plaintiff would at least receive $3\%$, the return from an investment in Government bonds, or quite likely a higher return from other conservative investments. A higher interest rate would decrease the present value of any future loss of earnings. For instance, according to the American Experience Table of Mortality with interest at $4\%$, the present value of a life annuity of $5,000 for a person aged forty is $77,215. The court will, however, in a situation such as this, take all of the facts and inferences therefrom in the light most favorable to the plaintiff and will therefore assume that the jury found the present value of his future loss of earnings is the approximate sum of $101,000 which sum, together with the $9,000 loss of earnings between the date of accident

and the date of trial, would aggregate a total of about $110,000. No higher figure could be justified from the evidence.

In fixing plaintiff's total damages at $375,000 it is safe to assume, therefore, that the jury allowed at least the difference of approximately $265,000 for other damages suffered by the plaintiff. Both of plaintiff's legs were amputated near the pelvis, leaving practically no stumps; the pelvis was fractured in two places; there was a laceration of the perineum, and he suffered severe shock. The evidence was conflicting as to whether or not he will be able to wear artificial limbs. If not, he will be a permanent wheel chair case. No decision has been called to the attention of the court, and none has been found, where any award even approaching this amount has ever been made or sustained for comparable injuries.

In *Bartlebaugh* v. *Pennsylvania Rd. Co.* (150 Ohio St. 387), decided 1948, the court had before it a case of very comparable injuries, including the amputation of both legs, with the length of stumps and the condition of the nerves such that the plaintiff might never be able to use artificial limbs. The jury returned a verdict of $225,000. The Court of Appeals of Ohio affirmed this verdict and in the opinion set forth the details of the injuries (78 N. E. 2d 410). On appeal to the Supreme Court of Ohio the verdict was reduced to $150,000. The plaintiff was there twenty-three years of age with annual earnings of $2,841. The court found that the present value of future loss of earnings would amount to $57,617. By reducing the verdict to $150,000, this left a difference of $92,383 for plaintiff's other damages. The court stated that any amount beyond this sum must be considered excessive.

*Delaney* v. *New York Central R. R. Co.* (68 F. Supp. 70), decided 1946, is another case involving very comparable injuries, including the amputation of both legs four inches below the buttocks with degeneration of the ends of both stumps. A verdict in favor of the plaintiff of $165,000 was allowed to stand. The plaintiff there was thirty years of age with annual earnings of $3,608.78. His loss of earnings up to the time of trial were $4,000 which, together with the present value of his future loss of earnings, amounted to a total of about $100,000. This left a balance of approximately $65,000 for plaintiff's other damages which the court did not feel was excessive.

In *St. Louis Southwestern Ry. Co.* v. *Ferguson* (182 F. 2d 949, *supra*), decided 1950, it appeared that the injuries were fully as serious although not identical to those sustained by the plaintiff here. The injuries included loss of the left leg, right

hand and most of the left hand. Plaintiff could not use artificial limbs or crutches and would be permanently confined to a wheel chair. The damages attributable to loss of earnings are not disclosed in the opinion but a verdict of $150,000 was allowed to stand.

In *Counts* v. *Thompson* (359 Mo. 485), decided 1949, the court had before it a case of a thirty-six-year-old man earning between $300 and $350 per month. The injuries were such, including the loss of both legs, that plaintiff could not use artificial limbs and would be a wheel chair case. A verdict of $165,000 was reduced to $140,000 by the trial court and was thereafter reduced by the appellate court to $80,000.

In *Aly* v. *Terminal R. R. Assn.* (342 Mo. 1116), decided 1938, the plaintiff was forty-two years of age and earned $214 per month. He lost both legs, the nerves were exposed and artificial limbs could not be used. A verdict of $85,000 was reduced to $40,000.

In *Fried* v. *New York, New Haven & Hartford R. R. Co.* (183 App. Div. 115, affd. 230 N. Y. 619, *supra*), decided 1918, the plaintiff was a railroad employee. It appears from the record on appeal that he was thirty-three years of age and earning $5 a day plus overtime. As a result of severe burns both arms were amputated at the shoulder sockets, leaving no stumps of any kind, and plaintiff's feet were permanently injured. The injuries resulted in great pain and in total and permanent disability. A verdict of $85,000 was reduced to $55,000 which, at present valuations, might be considered as equivalent to approximately $100,000.

In considering the foregoing decisions the court has taken into consideration the date of each together with the fluctuation in the purchasing price of the dollar as reflected in the Statistical Abstract of the United States published by the United States Department of Commerce and in the Economic Almanac. Of the foregoing decisions, that most favorable to the plaintiff is *Bartlebaugh* v. *Pennsylvania Rd. Co.* (150 Ohio St. 387, *supra*), in which the court concluded that the sum of approximately $92,000 might be allocated for damages other than loss of earnings. Adjusted to the present purchasing price of the dollar, the amount would still be under $100,000. Taking, therefore, both the facts and the law in the light most favorable to the plaintiff, the court concludes that any finding that plaintiff's total damages exceed $210,000, comprising a maximum amount of $110,000 for past and future loss of earnings and a maximum amount of $100,000 for other damages, cannot be sustained. The finding by the jury that such total damages amounted to

$375,000 was necessarily predicated upon elements of natural pity and sympathy. A verdict resulting from sympathy is equally as objectionable as one resulting from passion and prejudice. Particularly appropriate here is the statement made by the court in *Ford Motor Co.* v. *Mahone* (205 F. 2d 267, 273), as follows: '' What is said in the above cases with regard to the excessiveness of verdicts resulting from passion and prejudice applies with equal force where such excessiveness results from pity and sympathy, as was manifestly the case here, where plaintiff had been seriously and permanently injured and had to come before the jury in a wheel chair. Nothing else in the record explains the size of the verdict ''.

The jury found that the plaintiff was guilty of contributory negligence which amounted to twenty percent of the total negligence. Such finding by the jury has not been challenged on the argument of this motion, and applying such percentage to plaintiff's total maximum damages of $210,000 as here determined, would result in a reduction of the verdict to $168,000. A verdict even of $168,000 is larger than any verdict which has been permitted to stand in any comparable case which has been cited or which the court has been able to find. Any sum in excess of this amount is clearly excessive.

Motion to set aside the verdict is granted unless plaintiff shall stipulate within twenty days from the date hereof that the verdict be reduced to $168,000. If such stipulation is made, the motion to set aside the verdict as so reduced is denied.