Ronald HUBBARD, Plaintiff,

v.

The LONG ISLAND RAILROAD CO.,
Defendant.

Civ. No. 15923.

United States District Court
E. D. New York.
June 6, 1957.

O'Hagan, Reilly & Beasley, New York
City, for plaintiff, by Henry J. O'Hagan,
New York City, of counsel, in opposition.

Otto M. Buerger, New York City, for
defendant, by Desmond T. Barry, New
York City, of counsel, for the motion.

RAYFIEL, District Judge.

The plaintiff, a brakeman in the defendant's employ, brought an action under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., to recover damages which he sustained in an accident which resulted in the loss of both his legs below the knee. The jury returned a verdict in his favor in the sum of $226,-000. The defendant has moved for an order setting aside the verdict on the ground that it is excessive, and granting a new trial.

The crux of the defendant's oral argument was directed to the question of loss of future earnings. It contended that it had adduced proof, through qualified medical experts, sufficient to establish that the plaintiff could be rehabilitated, and could be usefully and gainfully employed, and, hence, that the jury's award for the estimated plaintiff's loss of future earnings, the specific amount of which is, of course, unknown, was "so shockingly excessive as to warrant a new trial." The plaintiff's medical experts, however, testified quite to the contrary as to those matters, and that was one of the issues or elements of damage which the jury was called upon to determine.

In his oral argument, counsel for the defendant, in support of his position,

1

relied chiefly on the case of Conkey v. New York Central Railroad Company, 206 Misc. 1077, 136 N.Y.S.2d 189. Conkey suffered the loss of both legs above the knee, and counsel pointed out that a verdict in his favor was reduced to $168,-000. It is well established that verdicts rendered in other actions of a similar nature can be of but meager value in determining whether a verdict in a given case is excessive. Even if that were not so, the Conkey case is so clearly distinguishable from the case at bar as to be of no value whatsoever as a guide. Medical and hospital expenses in the instant case were in excess of $11,000; Conkey incurred none. Conkey was subjected to one operation; the plaintiff herein to three major operations, in addition to other relatively minor operative procedure. Conkey's life expectancy was 29.25 years while that of the plaintiff was 45.61 years. Liability was conceded in the instant case; in the Conkey case the Court found that the plaintiff had sustained damages in the amount of $210,000. but reduced the verdict to $168,000 because the jury had found Conkey guilty of contributory negligence to the extent of 20 per cent. Finally, this plaintiff was expected to earn about $5,500 per annum while Conkey's annual earnings were figured at $4,830.

The report of the Veterans' Hospital, where the plaintiff is still confined, shows that he suffered severe pain on upwards of one hundred occasions, and that sedation of various kinds was administered to him several hundred times. Medical experts for both the plaintiff and the defendant testified that he had undoubtedly suffered and would continue to suffer so-called "phantom" pains. That was an element of damage for which the jury might well have made a substantial award. Others were his loss of wages to the date of the trial and the aforementioned hospital and medical expenses of upwards of $11,000. In addition, the jury probably included in its verdict an award to compensate the plaintiff for the mortification and embarrassment which

he will be expected to suffer because of the loss of his legs.

Since the argument of the motion the defendant has filed a memorandum in support of its position, in which, *inter alia,* it cites the case of Delaney v. New York Central Railroad Company, D.C., 68 F.Supp. 70. Delaney, a brakeman in the employ of the defendant, suffered the loss of both legs above the knee, and a jury, in an action to recover damages therefor, returned a verdict in his favor in the sum of $165,000. But the Delaney case, like the Conkey case, supra, is clearly distinguishable from the case at bar. Delaney's salary was about $4,000 per annum, Hubbard's was about $5,500; Delaney was 30 years of age at the time of the trial while Hubbard was 23; Delaney had a life expectancy of 35 years, while Hubbard's was 45.61 years; the Delaney case was tried in 1946, when the value of a dollar was probably considerably below the 1957 figure.

For obvious reasons I have given no consideration to defendant's remaining contention that the reduction of the verdict is warranted because "Each verdict of the type presents itself as a target for lawyers to shoot at for the publicity that it receives" and "Litigants utilize the verdicts to set up mathematical ratios to determine the value of their pending law suits" and "It then becomes apparent that everyone involved in a lawsuit tries to outdo the other so that the verdicts bear no true relationship to the actual damages" and, finally, because "Huge verdicts become a constant drain on industry for which the public eventually bears the burden."

As to the claim for loss of future earnings, it appears that the jurors believed that the plaintiff could earn little, if anything, for the remainder of his years of work-expectancy. Even if I entertained a different view, I could not with propriety substitute my judgment for theirs, since I do not believe that the verdict was so flagrantly excessive as to offend my sense of justice.

Accordingly, the motion is denied. Submit order.