Robert G. Wolfe, Plaintiff, *v.* General Mills, Inc., et al., Defendants.

Supreme Court, Erie County, August 31, 1962.

*Phelps, Gray, Mansour & Hewitt* (*Benjamin N. Hewitt* of counsel), and *Dudley, Stowe & Sawyer* (*Roy P. Ohlin* and *James S. Marvin* of counsel), for Herbert F. Darling, defendant. *Paul W. Beltz* for plaintiff. *Gibbons, Pottle, O'Shea & Adamson* (*Willard M. Pottle* of counsel), for General Mills, Inc., defendant. *Bertil L. Peterson* for Johnson, Drake & Piper, defendant.

William B. Lawless, J. Defendants Herbert F. Darling and Herbert F. Darling, Jr., doing business as Herbert F. Darling move to set aside a verdict of $500,000 against them on the ground that it is excessive, contrary to the weight of evidence and contrary to law on various grounds.

On January 4, 1960, plaintiff was employed by Johnson, Drake & Piper, Inc., and was operating a backhoe while digging some ditches across the General Mills property in Buffalo, New York. Plaintiff's employer, Johnson, Drake & Piper, Inc., was general contractor, and Herbert F. Darling was a subcontractor employed by Johnson, Drake & Piper, Inc. On the day of the accident, the Darling crane was loading wood pilings, approximately 50 to 60 feet in length from the westerly side of the job site to a truck on the easterly side of the job. The pilings had been removed from an adjacent dock. The Darling crane had attached to its boom a clam bucket which picked up timbers and pilings and moved them in a clockwise direction from west to north to east, so as to drop them into the truck. At the time of the accident, plaintiff was driving the backhoe in the northerly portion of the job and a piling dropped from the clam bucket, striking plaintiff and causing the injuries for which he sued.

At the time of the accident plaintiff Robert G. Wolfe was 30 years of age and was earning approximately $7,700 per year. He was married and had three infant children. As a direct result of the accident the plaintiff suffered serious personal injuries to his skull, brain, and extremities. He lost his sense of taste and smell, lost the sight of one eye, lost partial sight of the second eye, lost hearing in one ear, has draining in the other ear, has facial paralysis, difficulty in eating and in his movements. He suffers constant pain, his speech is impeded, his memory is impaired and he is mentally enfeebled. At least three physicians testified that his injuries are permanent and progressive in character. Plaintiff may develop traumatic epilepsy. One physician testified that he may nevertheless live a full expectancy of life.

The plaintiff was unconscious for weeks after the accident, has had brain surgery, been hospitalized on numerous occasions, and is totally and permanently incapacitated.

Prior to submitting the case to the jury, the court dismissed the complaint against Glenn Staffen and John K. Staffen, doing business as Fred Staffen, Jr. Trucking Co. The court submitted special findings of fact to the jury as to the remaining defendants. The general verdict reported was in favor of the plaintiff against the defendant Darling for $500,000 and the jury found in favor of the third-party plaintiff Darling as against the third-party defendant Johnson, Drake & Piper for $200,000. This court set aside the third-party verdict because the jury found the third-party plaintiff guilty of active negligence in its special findings of fact.

The principal issue presented on this motion is whether the verdict is excessive.

On the trial, the defendants did not contest the medical testimony of the plaintiff and we must therefore assume that it accurately describes the condition of the plaintiff. We must also conclude that plaintiff is permanently and totally disabled; that his condition is progressive and that he will require increased medical attention hereafter. His expectancy is 40 years, and as indicated above, there is medical testimony that in spite of the seriousness of his injuries, he may live to his expectancy. On the trial, the defendant did not offer expert testimony from which the jury could have computed the present value of the plaintiff's loss of future earnings.

Upon the argument to set aside the verdict as excessive, the defendants submitted verdicts in other personal injury cases awarded in various cases in the State of New York and par-

ticularly verdicts rendered by Judges of the Court of Claims, sitting without juries. It was argued that there is no prior New York verdict comparable in amount to the one rendered in this case and therefore, the very size of the verdict demonstrates that it is unreasonable and that it was reached because of sympathy for the plaintiff, his wife and family. This court believes that the test for excessiveness is not whether larger verdicts have been rendered in similar cases, but whether this particular verdict is, in the famous words of Chancellor KENT "so excessive as to strike mankind, at first blush, as being, beyond all measure, unreasonable and outrageous, and such as manifestly to show the jury to have been actuated by passion, partiality, prejudice or corruption" (*Coleman* v. *Southwick*, 9 Johns. 45, 52). In New York State, the amount of damages to be awarded for personal injuries is primarily a question of fact and the court should interfere on the grounds of excessiveness only in exceptional cases. (*Reich* v. *Evans*, 7 A D 2d 765, 766 [3d Dept., 1958]; *Fitzgerald* v. *New York Cent. R. R. Co.*, 215 App. Div. 1 [4th Dept., 1925]; *Condon* v. *Nilsen*, 278 App. Div. 698 [2d Dept., 1951]; *Hogan* v. *Franken*, 221 App. Div. 164, 166 [3d Dept., 1927]; 2 New York Law of Damages, pp. 1471–1472; 14 N. Y. Jur., Damages, § 197.)

As the court said in *O'Toole* v. *United States* (242 F. 2d 308, 309 [1957]) with respect to an award of $400,000 in a single personal injury case: "Obviously this is a large award. But it loses its breathtaking character when the factual background is understood."

Recently, the United States Court of Appeals for the Tenth Circuit refused to upset a verdict for $400,000 for injuries sustained by a 12-year-old boy in an automobile collision. The court commented that no larger judgment for personal injuries had ever come to its attention. Noting that the boy sustained severe permanent brain injuries resulting in loss of memory, loss of intellectual functioning, loss of orientation, difficulty in chewing, swallowing, talking and breathing, partial paralysis and injury to both legs and arms, loss of control over his elimination processes, and other difficulties, the court observed: "He has now been completely destroyed as a human being." (*Barnes* v. *Smith*, 305 F. 2d 226, 229.)

The Supreme Court, Westchester County, (DOSCHER, J.) similarly refused to reduce a $400,000 verdict obtained for a 6-year-old girl who was a passenger in an automobile struck by a tractor trailer. She similarly suffered extensive injuries.

These authorities all hold that the question of damages is within the power and peculiar province of the jury. It rests

in their sound discretion unless the damages are so outrageous as to induce the court to believe that the jury must have acted from prejudice, pity, passion or partiality. It is not enough for this court to say that in the opinion of this court the damages are excessive and that the court would have given less. It is the function of the jury, not the court, to assess damages in actions for personal injuries. In this particular case, the jury was composed of individuals with above average intelligence and backgrounds of responsibility. The panel was composed of an engineer, the general manager of a steel plant, a plant superintendent, a store manager, a printing company president, a general contractor, business men and others. It is interesting to note that their special findings of fact were consistent, one with the other, although they allowed recovery over as against the third-party defendant in their general verdict, contrary to the court's charge. This is understandable in view of the complexity of the third-party action.

On the whole, this court believes that the jury conscientiously considered all of the proof before it, evaluated the present injuries of the plaintiff, his special damages, his pain, suffering, disability and, within the limits of the charge, attempted to forecast his pecuniary loss. We cannot say that this verdict was based on "passion, partiality, prejudice, or corruption". Rather, we believe it was a conscientious appraisal of the pecuniary loss, past and future, of a man who has been virtually destroyed by a staggering industrial accident.

Defendants contend that the proper method for computing impairment of earning capacity is to award such a sum as will provide an annuity equal to the amount lost through the impairment of the earning capacity less an allowance for advanced age and the ordinary casualties of life. In support of this method they cite the New York Law of Damages (vol. 2, § 594). Applying it, defendants argue that the present value would be $130,900, rather than $308,000 (earnings at date of accident [$7,700] times expectancy [40 yrs.]). Yet, on the trial, defendants elected not to offer proof of "present value".

For purposes of this motion, we believe the court should accept this argument as controlling law in view of the decision in *Hollwedel* v. *Duffy-Mott Co.* (263 N. Y. 95 [1933]). The Court of Appeals (LEHMAN, J.) held in a case involving breach of an employment contract, that the measure of damage was the wage payable during the remaining term reduced by income which the discharged employee could earn during the unexpired term. The court further held that such a sum should be reduced by a "discount" to the date of breach.

The court suggested that 6% be used. Assuming that such a "discount" should be used in computing the present value of the future earnings of plaintiff, the verdict is not unreasonable if broken down as follows:

(1) Present value of $7,700 per annum............ $130,900
as argued by defendant (Plaintiff contends this
figure is $150,000 at age 32).
(2) Past wages ............................... 16,000
(3) Past medical ............................. 12,000
(4) Future medical for 40 years at $6,000 per annum,
assuming institutional care — $240,000 — dis-
counted at 42% (Same % used by defendant in
■ *supra*) ............................... 100,800

Total ................................... $259,700

Obviously, the balance of the verdict ($240,300) must be assigned to conscious pain and suffering. With respect to it, no precise rule can be formulated, either to measure the pain or to compensate for it in money damages. (*Robison* v. *Lockridge,* 230 App. Div. 389 [4th Dept., 1930].) It is peculiarly fitting, therefore, that the amount of such damages should be determined by the jury. (*Hogan* v. *Franken, supra*; *Frey* v. *Gerhard Lang Brewery,* 256 App. Div. 1054 [4th Dept., 1939]; Morris, Liability for Pain and Suffering, 59 Col. L. Rev. 476 [1959]; 2 New York Law of Damages, p. 1471; 25 C. J. S., Damages § 93.)

In some jurisdictions outside New York, a distinction is made between conscious pain and suffering prior to trial and conscious pain and suffering in the future. In such jurisdictions, no "discount" is made against the award for pain and suffering suffered prior to trial, but the "discount" may be allowed where there is some basis for distinguishing future from past pain and suffering. In the case before us, it is impossible for the court to distinguish. If $240,000 is allocated to conscious pain and suffering, this averages approximately $6,000 per year of expectancy for that item without attempting to designate "past" or "future" pain.

When we analyze the sources of conscious pain and suffering, viz: blindness, loss of taste and smell, mental enfeeblement, loss of hearing, inability to chew and masticate food, facial palsy, difficulty in walking, extensive facial and head scarring, impediment of speech, rash from use of drugs, inability to lead a normal life, inability to sleep, inability to close eye (there is proof that the plaintiff must put his finger over his eye in order to close the eye) and the wearing of a very large plate

under the scalp and against the brain, the problems of daily medication, not to mention humiliation and embarassment of his present condition, they do not unreasonably explain the balance of the verdict made herein.

We think it is not the function of the trial court to attempt to psycho-analyze the collective mental process of the jury in reaching its verdict but having heard the proof and having viewed the plaintiff, we cannot in all justice say that the verdict is excessive, or that it shocked this court or that no reasonable man could reach such a verdict.

In considering the total amount awarded, we have not alluded previously to the fact that there is distinct proof in the record that the plaintiff was a regular and industrious worker prior to his injury and while he was earning a gross pay of approximately $8,000 at the time of his injury, there is proof that if he had remained in his occupation as an equipment operator, he would have received periodic wage increases since such operators have enjoyed a wage increase in every contract negotiated for the last 20 years. Also there is testimony which indicates that the plaintiff was acquiring experience to qualify as a master mechanic which would have entitled him to a substantial increase in income.

For all the reasons set forth herein, the motion of Herbert F. Darling to set aside the verdict on the grounds indicated is denied.