■ PETER SENKO et al., Respondents, v JOHN FONDA, Appellant.—In a negligence action to recover damages for personal injuries, etc., defendant appeals from a judgment of the Supreme Court, Nassau County, dated May 6, 1975, which is in favor of plaintiffs and against him, upon a jury verdict. Judgment reversed, on the law and the facts, and new trial granted with respect to the issue of damages only, with costs to abide the event, unless, within 20 days after entry of the order to be made hereon, plaintiffs Peter Senko and Loretta Senko shall serve and file in the office of the clerk of the trial court written stipulations consenting to reduce the verdicts in their favor to $50,000 and $5,000 respectively, in which event, the judgment, as so reduced and amended, is affirmed, without costs or disbursements. Plaintiff Peter Senko was hospitalized from January 29, 1970 until February 8, 1970. He returned to his job on a part-time basis in early March, 1970. In July, 1970, his doctor placed him on "full activity", which, according to the doctor, meant that "the patient could function at his maximal ability." In October, 1970, the prognosis was that plaintiff was having a healing fracture involving the L-1 vertebra, that he had residual symptoms of pain and stiffness, and that those complaints might be of a permanent nature. Plaintiff Peter Senko returned to full-time work in November or December, 1970 and accomplished all phases of his job for at least the next 26 months. He was dismissed from his job in March, 1973, and attempted to find work. He was unsuccessful, but admitted that despite his employment experience as an inventory control specialist he had not sought a "desk job". In September, 1973 he was approved for Social Security disability benefits and thereafter ceased looking for employment. In October, 1973, exactly three years after his last visit to his doctor, he consulted his doctor for the purpose of substantiating his application for Social Security disability

benefits. The prognosis at that time was that plaintiff Peter Senko had sustained a compression fracture of the L-1 vertebra, that he was having residual pain in his lumbar spine, that he was having pain and numbness in his right leg, that he also had restricted mobility in his spine, and that based upon the duration of time which had passed, his symptoms were of a permanent nature. An examination conducted in March, 1975, at the request of his attorney, resulted in "no change" in the prognosis. Plaintiff Peter Senko's medical bills totaled $1,825. The jury, after 33 minutes of deliberation, returned a verdict of $71,500 for plaintiff Peter Senko and $10,000 for plaintiff Loretta Senko, for loss of services. Both awards are clearly excessive. It is true that the amount of damages to be awarded for personal injuries is primarily a question of fact for the jury (*Wolfe v General Mills,* 35 Misc 2d 996; see *Fitzgerald v New York Cent. R. R. Co.,* 215 App Div 1). However, where the verdict of a jury is contrary to the weight of the evidence, or where it is excessive or inadequate, the trial court is vested with the power, and has the duty, to set it aside and to order a new trial (*Kligman v City of New York,* 281 App Div 93, 94; *Hogan v Franken,* 221 App Div 164). The exercise of this power rests in sound judicial discretion, based upon a careful consideration of the evidence (*Hogan v Franken, supra*). Matters of discretion are clearly reviewable by the Appellate Division; whenever discretion is vested in the Supreme Court it may be exercised by the Appellate Division by way of a review of the action of Trial or Special Term (*O'Connor v Papertsian,* 309 NY 465, 471–472). Where the exercise of discretion is at issue, certain standards of uniformity should be adhered to (see *Miner v Long Is. Light. Co.,* 47 AD2d 842, 847 [dissenting memorandum of Mr. Justice Hopkins]). This is not to say that the amount of damages awarded or sustained in cases involving similar injuries are in any way binding upon the courts in the exercise of their discretion (*Mullady v Brooklyn Hgts. R. R. Co.,* 65 App Div 549, 551). However, prior verdicts may guide and enlighten the court and, in a sense, may constrain it (*Mullady v Brooklyn Hgts. R. R. Co., supra*). "A long course of practice, numerous verdicts rendered year after year, orders made by trial justices approving or disapproving them, decisions on the subject by appellate courts, furnish to the judicial mind some indication of the consensus of opinion of jurors and courts as to the proper relation between the character of the injury and the amount of compensation awarded" (*Fried v New York, New Haven & Hartford R. R. Co.,* 183 App Div 115, 125, affd 230 NY 619; see *Conkey v New York Cent. R. R. Co.,* 206 Misc 1077). It was observed in one early opinion: "Long observation of the action of juries in cases of [similar] personal injury * * * affords a clue to the judgment of ordinary men as to the compensation that should be made for pain and suffering; and where a verdict is much above or much below the average, it is fair to infer, unless the case presents extraordinary features, that passion, partiality, prejudice, or some other improper motive has led the jury astray" (*Jennings v Van Schaick,* 13 Daly 7, 8–9; see *Becker v Albany Ry.,* 35 App Div 46). Recent verdicts in cases involving comparable injuries have been much lower than the $71,500 award in the case at bar. In *Bonder v Berman* (43 AD2d 653) the plaintiff's injuries consisted of a lacerated tongue which required eight stitches to close the wound, a lacerated chin requiring two stitches, a compression fracture of the vertebrae with a possible chip fracture at the fifth lumbar vertebra, a chip fracture at the fourth lumbar vertebra, a small corticle fracture of the humerus near the left shoulder joint, a fracture of the ninth and tenth ribs, neck strain and a contusion of the lower left lung. Plaintiff's medical bills were in excess of $1,900. The

jury returned a verdict in the sum of $4,000. The Appellate Division, Third Department, increased the award to $8,000, noting that such a figure would be "more reasonably representative" of the compensation due. In *Mastropolo v John Lowry, Inc.* (36 AD2d 817), the plaintiff sustained a complete fracture of the transverse process of the third lumbar vertebra. Plaintiff's accrued special damages, at the time of trial, were about $5,000. The jury returned a verdict of $85,000, which was reduced to $40,000 by the trial court. The Appellate Division, First Department, further reduced the award to $20,000. In *Barnhouse v Ladycliffe Coll.* (34 AD2d 803), plaintiff's *permanent* injuries included degeneration of the disc between the fifth and sixth cervical vertebrae, radiculitis and postconcussion syndrome. She incurred protracted pain and partial disability and had to wear cervical collars, according to her activities, over an eight-year period. This court increased a verdict in her favor to $20,000. In *Rice v Ninacs* (34 AD2d 388) the plaintiff suffered permanent injuries to the cervical spine which involved limitation of motion, nerve root irritation and pressure with spasm and excruciating pain radiating down the left arm, numbness in the fingers, pain on rotation of the neck to the left, fracture of the left sixth rib, strain of the upper back and sprain and aggravation of the low back. The jury returned a verdict of $15,000 and the resulting judgment was affirmed by the Appellate Division, Fourth Department. While none of the foregoing cases involve injuries precisely like those incurred by plaintiff Peter Senko, they do serve as a guide in considering whether the award to him was excessive. All involve spine and back injuries comparable to that suffered by Mr. Senko, and the special damages incurred in *Bonder* and *Mastropolo* are equivalent to, or greater than, the $1,825 incurred by Mr. Senko. This latter consideration, while not controlling, is often an aid to the jury and the court in arriving at, and reviewing, verdicts *(Becker v Ginsberg,* 23 AD2d 916). Even considering the effects of inflation, the verdict in the instant case is clearly excessive. In view of the foregoing, it is clear that a $71,500 verdict for plaintiff could only be justified by a finding of *complete* impairment of earning capacity. But such a finding would be contrary to the weight of the credible evidence. Plaintiff, despite a lengthy employment background as an inventory control specialist, concededly made no effort to obtain a job involving nonphysical labor. As his background indicates that he was capable of obtaining such nonphysical employment, damages for impairment of earning capacity should have been calculated on the basis of a *partial* impairment of earning capacity (see *Hollwedel v Duffy-Mott Co.,* 263 NY 95, 101; see, also, *Wolfe v General Mills,* 35 Misc 2d 996; *Dixon v United States,* 120 F Supp 747, 752). Accordingly, the verdicts in favor of the plaintiffs were excessive to the extent indicated herein. Gulotta, P. J., Hopkins and Latham, JJ., concur; Margett, J., dissents and votes to affirm the judgment, with the following memorandum, in which Shapiro, J., concurs: Plaintiff Peter Senko was a 55-year-old pedestrian who was struck by an automobile driven by the defendant. Subsequent to the accident on January 29, 1970, he was admitted to Deepdale General Hospital with a compression fracture of the L-1 vertebra. He continuously complained of pain in his lower back and was treated with bed rest and medication. He also utilized a "Cow Horn" brace to relieve the pain. He was seen on a daily basis until his discharge about 10 days after his admittance. Thereafter, as Mr. Senko continued to experience considerable pain, he continued making office visits to the orthopedic surgeon, Dr. Forman, who had administered to him in the hospital. All of the objective tests performed by Dr. Forman at the office indicated that his muscle movement was restricted by pain and muscle spasm. Treatment consisted of

further pain medication and continued use of the brace. The X rays revealed a slight loss of the normal lumbar lordosis, indicating that the spine was flattened, causing a slight reversal to the normal curve of the back. Despite monthly visits to his orthopedic surgeon, he returned to his job as a salesman on a part-time basis in early March, 1970, and on a full-time basis late that year. Though nominally a salesman, his job involved arranging stock in customers' storehouses in preparation for delivery, and unloading trailer trucks when the merchandise arrived. His testimony was that he was "requested" to accomplish all phases of his job, including the physical labor. No assistance was available for that phase of his job. He continued to do all phases of the job, under protest, until January, 1973. After that, he simply called upon his accounts until his employment was terminated in March, 1973. Mr. Senko was apparently quite adept at doing various work on his home before the accident. This included insulation, interior carpentry, painting and landscape work. Since the accident he has not even attempted to continue doing that type of work, although his wife undertook all home maintenance work. Mr. Senko is no longer able to drive his car for any length of time since his right leg often becomes numb. As a result, he lacks complete control over acceleration and the brake pedal. By September, 1973, Mr. Senko had stopped looking for work and was approved for Social Security disability benefits. It was at that time that he again renewed treatment procedures by his orthopedic surgeon. X rays taken at that time showed that the fracture had completely healed, but that the spine was flattened in the area of L-1 as a result of the fracture. The doctor concluded that Mr. Senko was having residual pain in his lumbar spine, numbness in his right lower extremity, and had sustained damage to the nerve root which extends from L-1 to the anterior of the thigh, due to the original compression fracture. It was his opinion that these constituted a permanent disability. According to Dr. Forman, it was not unusual for symptoms related to nerve root damage to be delayed and that the symptoms of pain and/or numbness can fluctuate in intensity. His subsequent examination of plaintiff Peter Senko just prior to trial indicated no change in his condition. It is my view that the jury could properly conclude, therefore, that Mr. Senko was unable to work effectively at his chosen occupation. The expert medical testimony revealed that Mr. Senko had a restriction in motion of the spine when bending forward and that such restriction was permanent in nature. His attempts to continue working should not now be used to penalize him (see *Breitbart v Equitable Life Assur. Soc. of U. S.,* 182 Misc 607). While this court has the power to set aside a verdict for personal injuries, a verdict should not be reduced or a new trial granted where there is nothing indicating irregularity, bias, unfairness or inadequate consideration of the testimony *(Rice v Ninacs,* 34 AD2d 388; *Fitzgerald v New York Cent. R. R. Co.,* 215 App Div 1; *Morris v International Ry. Co.,* 174 App Div 61; 11 Carmody-Wait 2d, § 72:164). In my view, the record here does not divulge good grounds for reducing the verdict or granting a new trial. It must be remembered that there is substantial support in the record for a finding that Mr. Senko suffered a permanent impairment of earning capacity, as well as nerve root damage involving considerable pain, which was also permanent in nature. At the time of the accident, he was earning $175 per week and had a work expectancy of 7.2 years. Consequently, the jury's obvious conclusion that he was totally disabled from working finds support in the record and is probably the major ingredient forming the basis of its award of $71,500. Viewed in this light, the award cannot be considered excessive. Moreover, this court should not

substitute its judgment for that of the jury unless the amount of the verdict is so excessive as to shock its conscience (*Rice v Ninacs, supra,* p 390). The amount of damages to be awarded for personal injuries is primarily a question of fact, and the court should interfere on the grounds of excessiveness only in exceptional cases (*Wolfe v General Mills,* 35 Misc 2d 996). To do otherwise would amount to a usurpation of the jury's functions (*Brown v McChesney,* 279 App Div 825). As such, the verdict of that jury is the combined judgment of persons of various callings and walks of life who have been charged with the duty of determining the amount of damage which an injured party has sustained. Such a verdict is not lightly to be set aside. That another trier of the facts might well have arrived at a lower amount is not the test (*MacArthur v Coxon Real Estate,* 28 AD2d 1191; *Colby v Drew,* 15 AD2d 846); nor is the amount of special damages an absolutely controlling factor (*Sandor v Katz,* 27 AD2d 766; *Becker v Ginsberg,* 23 AD2d 916). In view of the permanent injuries sustained by Mr. Senko, and the consequent impairment of his ability to work, I cannot say that the verdict shocks my conscience. Furthermore, it did not shock the conscience of the trial court, which denied defendant's motion for a new trial and refused to reduce the verdict. I see no fair basis for interfering with its discretion. In addition, Loretta Senko's loss of services was substantial. There was evidence that she undertook the household maintenance after her husband's injury and that, as the result of the heart attack she eventually suffered, it became necessary to call in outside help to perform those functions. Those duties included painting both the interior and exterior of the house, putting out refuse in garbage cans and handling garden and lawn equipment. The concept of consortium, in addition to embracing the elements of loss of love, companionship, affection, society, sexual relations, solace and more, also includes loss of support or services (*Millington v Southeastern Elevator Co.,* 22 NY2d 498, 502). That Mrs. Senko suffered significant personal loss as a direct consequence of her husband's injuries finds ample support in the record. The jury's award of $10,000 to her should therefore not be disturbed.